**Raymond Morgan HARDY, Petitioner–Appellant,**

v.

**John P. WIGGINTON, Respondent–Appellee.**

No. 89–5749.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1990.

Decided Oct. 29, 1990.

Raymond Morgan Hardy, LaGrange, Ky., William Kirk Hoskins (argued), Louisville, Ky., for petitioner-appellant.

Frederic J. Cowan, Atty. Gen., John Gillig, Asst. Atty. Gen. (argued), Office of the Atty. Gen. of Kentucky, Frankfort, Ky., for respondent-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

The petitioner, Raymond Morgan Hardy, was convicted in 1985 of first-degree sodomy in the Circuit Court of Graves County, Kentucky. He filed a petition for a writ of habeas corpus in December 1988, complaining that his sixth amendment right to confrontation was violated at trial. The district court denied the petition, and this appeal followed. Finding Hardy's arguments to be without merit, we affirm the decision of the district court.

## I

The petitioner was convicted, after a jury trial, of sodomizing his six-year-old daughter. The victim was the principal witness against Hardy. Prior to trial, the prosecutor produced a letter from the child's treating physician and an affidavit from a Board-certified psychologist indicating that testifying in open court would be so psychologically dangerous to her that the experience might "permanently endanger her psychological recovery." Based on this evidence, the trial judge decided that forcing her to testify in open court would be inappropriate. Relying on a Kentucky rule of criminal procedure, RCr 7.10, he allowed the little girl to testify at trial through a videotaped deposition taken several weeks before trial.[1] Hardy was present at the deposition and his right to cross-examine the witness was not infringed. During trial, the jury saw and heard the videotaped testimony. The only parts of the tape not shown to the jury were omitted because of Hardy's objections.

The jury subsequently convicted Hardy of first-degree sodomy, and he was sentenced to twenty years' imprisonment. Hardy then appealed, eventually reaching the Kentucky Supreme Court, which affirmed his conviction in a published opinion. *Hardy v. Commonwealth*, 719 S.W.2d 727 (Ky.1986). Hardy's conviction became final on December 18, 1986, when his petition for rehearing was denied. Hardy has not challenged any of the factual findings of the Kentucky Supreme Court.

In December 1988, Hardy filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Kentucky. He claims that the trial court violated his sixth amendment right to confront his accuser by allowing his daughter to testify by way of the videotaped deposition. The district court rejected his argument and denied the petition. Hardy now appeals that judgment.

## II

Hardy claims that the procedure used by the trial court to allow his daughter to testify in less threatening surroundings violated his sixth amendment Confrontation Clause rights. Essentially, he argues that all testimony presented at trial must be heard when given in the physical presence of the trier of fact.

It is not clear that this court need even reach the merits of Hardy's claim. Retroactivity in habeas cases can be seen as a "threshold question" that is logically prior to the merits of a petitioner's habeas claim. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 1071, 103 L.Ed.2d 334 (1989) (O'Connor, J.) (plurality opinion). If the petitioner's claim would not be applied retroactively to his case even if the claim were accepted as valid, then the court need not even address the merits. Additionally, the Supreme Court has simplified retroactivity standards. The new retroactivity jurisprudence seeks to avoid anomalous results. For example, there are no longer situations where a particular petitioner benefits from retroactive application in his habeas case while other similarly situated individuals are denied retroactive application of new principles.

■ Therefore, this court will determine, at the outset, whether the petitioner's claim, if valid, would be applied retroactively.[2] Under current retroactivity stan-

---

1. Originally, the prosecution based its motion on RCr 7.10, which provides for the use of depositions in criminal cases where the witness is unavailable. After the indictment but prior to trial, the Kentucky legislature adopted a statute, KRS 421.350(3), that was quite similar to the statute that the Supreme Court subsequently struck down in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The prosecutor then renewed his motion based on this new statute. However, because the trial judge believed that the statute violated the face-to-face confrontation provision of the Kentucky Consti-

tution, he explicitly relied on RCr 7.10 rather than the new statutory provision. Thus, that particular statute is not before this court.

2. Recently, in *Collins v. Youngblood,* —— U.S. ——, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the Supreme Court addressed the merits in a habeas case rather than examining the retroactivity issue first. In that case, however, the state of Texas did not raise the retroactivity issue either in its petition for a writ of certiorari or its brief on the merits, and, at oral argument, specifically indicated that it did not rely on the argument.

dards, as a general matter, "new rules will not be applied or announced in cases on collateral review unless they fall into one of two exceptions." *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989); *Accord, Saffle v. Parks*, —— U.S. ——, 110 S.Ct. 1257, 1259–60, 108 L.Ed.2d 415 (1990); *Butler v. McKeller*, —— U.S. ——, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990). The first exception to this general principle is that the new rule will be applied retroactively if it limits the substantive scope of the criminal law—that is, if it places certain types of conduct beyond the scope of governmental authority. The second is that the new rule will be applied retroactively if it imposes restrictions that are "fundamental to the concept of ordered liberty." *Teague v. Lane*, 489 U.S. at 310, 109 S.Ct. at 1075. Thus, this court will first determine whether Hardy advocates the establishment of a "new rule" and, if so, whether it falls into either of the two exceptions. If he is asking for a new rule and if this case does not fall under either of the two exceptions, this court need not reach the merits of Hardy's claim.

It makes sense to look at the retroactivity issue first in habeas cases, since the petitioner cannot benefit from a rule that will not be applied to him. Like certain jurisdictional issues, this inquiry requires the court to take "a peek at the merits." *See, e.g., International Association of Machinists v. Trans World Airlines*, 839 F.2d 809, 812 (D.C.Cir.1988). In deciding whether the petitioner advocates a new rule, this court must trace the development of Confrontation Clause principles. Obviously, such an inquiry sheds some light on the merits of the petitioner's claim.

The Supreme Court has defined a "new rule" of constitutional interpretation as one that "breaks new ground or imposes new obligations on the States or Federal Government." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time

the defendant's conviction became final." *Ibid.* (emphasis in original). *Accord Saffle*, —— U.S. at ——, 110 S.Ct. at 1260; *Butler*, —— U.S. at ——, 110 S.Ct. at 1216. Moreover, the Supreme Court has emphasized that this principle "validates reasonable, good-faith interpretation of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler*, —— U.S. at ——, 110 S.Ct. at 1217 (1990). Thus, in deciding whether a petitioner advocates a new rule, courts must stress the role of federal habeas jurisdiction: to "assure[ ] that state courts conduct criminal proceedings in accordance with the Constitution as interpreted at the time of the proceedings." *Saffle*, —— U.S. at ——, 110 S.Ct. at 1260.

This standard has been applied in a variety of contexts. For example, in *Butler v. McKeller*, the Supreme Court considered the issue of whether the rule announced in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), should be applied retroactively. Concluding that the result in *Roberson* "was susceptible to debate among reasonable minds," the Supreme Court concluded that *Roberson* announced a new rule. *Butler*, —— U.S. at ——, 110 S.Ct. at 1217. In that case, the right asserted by the petitioner, though not dictated at the time the conviction became final, was clearly established by the time that the petitioner sought habeas relief. In *Saffle v. Parks*, by contrast, the Court addressed a claim that rested on thinner constitutional ice. There, the petitioner, who had been sentenced to death, argued that an instruction to the penalty-phase jury that it should "avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence" violated his rights under the eighth amendment. *Saffle*, —— U.S. at ——, 110 S.Ct. at 1259. Although the Court did not formally pass on the merits of Saffle's claim, it did make it fairly clear that this claim would be unlikely to prevail on the merits. *See id.* at ——, 110 S.Ct. at 1263. In this case, as in *Saffle*, discussing whether the petitioner advances a new rule impli-

---

*Id.* at ——, 110 S.Ct. at 2718. Here, by contrast, the state of Kentucky raised the issue of retroac-

tivity in its brief (albeit somewhat inartfully) and advanced that position at oral argument.

cates many issues that would be relevant on the merits. Furthermore, deciding the retroactivity issue first in this case is somewhat awkward, since *Maryland v. Craig,* — U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), a case decided after the petitioner's conviction, sheds substantially more light on his case than do the cases decided at the time of conviction. And, under *Craig,* the petitioner loses.

## III

■ The petitioner contends that all testimony heard by the trier of fact must occur in the trier's physical presence. While it is true, broadly speaking, that the opportunity for the trier of fact to observe the demeanor of the witness is one of the goals furthered by the Confrontation Clause, that principle has never been absolute. Moreover, it is not clear that Hardy's daughter, whose testimony appeared on a video monitor, was not "in the presence" of the jury for purposes of the Confrontation Clause.

The petitioner cites a number of cases, including some from the Nineteenth Century, for the proposition that all evidence must be presented in the physical presence of the jury. After reviewing his arguments, we find that the cases cited by the petitioner demonstrate that there are exceptions to the general rule that testimony must occur in the presence of the trier of fact. In *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), for example, the Supreme Court upheld the constitutionality of reading testimony of a deceased witness from a prior trial to the jury. The Court did note the importance of having the witness "stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Id.* at 242–43, 15 S.Ct. at 339–40. However, the Court held that "general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 243, 15 S.Ct. at 340. Thus,

there have always been exceptions to the general principle that the jury must have the opportunity to observe the witness.

Similarly, in *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court faced the issue of whether prior out-of-court statements previously made by a witness who was testifying at trial could be admitted. The witness's prior statements were presented to the jury by reading his prior testimony from an earlier hearing and also by the testimony of a police officer who heard the witness make some of the statements. The Court found that since the declarant had been "testifying as a witness [at trial] and subject to full and effective cross examination" there was no significant Confrontation Clause problem. *Id.* at 158, 90 S.Ct. at 1935. We note that the ability of the defendant to cross-examine the witness was a key factor in the decision. *Ibid.* Here, as in *Green,* Hardy had the opportunity to cross-examine the witness.

Hardy does cite one case where the defendant won his Confrontation Clause claim, but that case is easily distinguishable. In *Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899), the Supreme Court struck down part of a statutory scheme aimed at persons who misappropriated government funds or property. The statute made it a crime to "embezzle, steal, or purloin" any money or other valuable item from the United States. *Id.* at 48, 19 S.Ct. at 574. The statute also imposed liability for aiding and abetting. *Ibid.* These provisions were, of course, quite acceptable. What was not acceptable, according to the Supreme Court, was a provision that a conviction of one party for misappropriating an item from the United States would be accepted as conclusive evidence that the item had, in fact, been misappropriated in the separate trial of another party accused of aiding or abetting the primary wrongdoer. *Id.* at 53, 19 S.Ct. at 576. This, according to the Supreme Court, deprived the defendant of the right to confront his accuser. *Id.* at 55, 19 S.Ct. at 577. However, the Supreme Court relied upon more than the fact that the testimony took place outside of the physical

presence of the jury. Instead, the Court stressed the fact that the defendant was convicted based on evidence presented at "another criminal prosecution with which he was not connected, and at which he was not entitled to be represented." *Id.* at 56, 19 S.Ct. at 577. Here, by contrast, Hardy had the right to cross-examine the witness and to impeach her credibility.

We are not saying that Hardy could not make an argument, based on the precedent that existed at the time his conviction became final, that all testimony must generally occur in the physical presence of the trier of fact. However, at the time, there was no precedent directly addressing the child-witness situation. Cases such as *Mattox* and *Green* demonstrate that there were well-recognized exceptions to the rule that all testimony should occur in the physical presence of the trier of fact. The real issue is whether the rule, rather than the exception, should logically apply to children testifying outside the courtroom. Either position would require the extension of prior precedent to cover new factual situations. Thus, the rule sought by the petitioner was not dictated by precedent that existed at the time the decision became final.

Because the Supreme Court had not addressed the issue of child witnesses at the time Hardy's conviction became final, our decision is, to some degree, informed by cases decided after the conviction became final. In *Saffle v. Parks,* the Supreme Court relied, in part, on decisions rendered after Parks's conviction had become final. *See Saffle,* —— U.S. at ——, 110 S.Ct. at 1261, 1263. This is not inconsistent with the analytical approach outlined above; one factor that is clearly probative of whether a particular result was dictated by precedent is the result that the Supreme Court and other courts have reached in subsequent cases interpreting the precedents. The instant case is one of those cases where subsequent decisions make it clear that the petitioner's claim was not dictated by precedent. The petitioner relies primarily on *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). We believe, however, that the more directly relevant case is *Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In the instant case, as in *Craig,* but unlike in *Coy,* the trial court made an individualized factual determination that the child witness would be psychologically hurt by being forced to testify in open court. In the Maryland procedure at issue in *Craig,* the judge, jury, and defendant remained in the courtroom while the child witness was examined and cross-examined by the attorneys in a separate room. Those in the courtroom observed by video monitor. The defendant could observe the witness, but the witness could not observe the defendant. *Id.* at ——, 110 S.Ct. at 3161.

*Craig* weakens Hardy's position significantly. In this case, as in *Craig,* the Court made an individualized determination that the child witness required special accommodation. Hardy, however, retained much more effective confrontation than the defendant in *Craig.* In *Craig,* the defendant was not present with the witness during the testimony. Here, Hardy was allowed to be present during the testimony. This meant that he could look his daughter in the eye and as she testified that he had sodomized her. As she testified, she could see him as well.

There are only two characteristics that serve to distinguish this case from *Craig,* and neither is particularly helpful to the petitioner. First, unlike in *Craig,* the defendant himself was present when the testimony took place. He literally confronted his accuser. Therefore, this case presents a significantly less serious Confrontation Clause problem than does *Craig.* The petitioner contends that the court erred by considering her generalized fear of the courtroom rather than her specific fear of facing the defendant. *Craig* does indicate that more than just fear of the courtroom is necessary to justify allowing a child witness to testify *outside* of the presence of the defendant. *Id.* at ——, 110 S.Ct. at 3169. However, the opinion goes on to state that where fear of the courtroom setting is the issue, the witness should be allowed to testify "in less intimidating surroundings, albeit with the defendant

present." *Ibid.* This is exactly what the court did in this case.

The second difference between this case and *Craig* is that here the witness testified by videotape rather than "live." As anyone who watches sports on television knows, contemporaneous viewing may be more exciting to watch, but tape-delay does not affect one's ability to observe. The petitioner suggests that he might have been prejudiced in some way by the use of pre-recorded testimony. We can imagine some situations in which this argument might have some merit. For example, something might come up during the trial itself that would form the basis for questioning the witness. Even so, the prosecutor could have put the child on as the first witness, in which case the tape delay would have no additional impact. Here, however, the petitioner has not demonstrated, even in the most rudimentary way, that he was prejudiced by this time delay. Nor did he ask the trial judge to recall the witness for additional testimony. He simply asks this court to engage in speculation. This we decline to do.

If anything, the petitioner may have benefited from the time between the taping and the trial. Hardy and his attorney were able to see and reflect upon the testimony of the prosecutor's star witness several weeks prior to trial. The entire defense strategy could have been formulated beforehand in order to undermine that testimony. Most defense lawyers would love to have the opportunity to hear and cross-examine the primary prosecution witness prior to opening statements. Moreover, the portions of the testimony that Hardy himself objected to were omitted. Normally, the jury is instructed to disregard objectionable material. Here, the jury never even heard it. As Hardy was the one whose objections resulted in cuts, he surely must have benefited.

## IV

Even if we were to assume, for the sake of argument, that the petitioner had a right to have the jury observe the witness during her testimony, it is not clear to us that the petitioner was deprived of this right. We are not aware of any pre-1986 cases that address the exact issue of what constitutes observation of the witness for purposes of the Confrontation Clause. Nonetheless, based on the precedent that existed at the time the conviction became final, good-faith interpretation of existing law would allow a court to conclude that the witness was "present" for purposes of the Confrontation Clause in this case.

In *Mattox*, after all, the court allowed the jury to hear testimony *read* from the record of a previous trial. *Mattox*, 156 U.S. at 240, 15 S.Ct. at 338. We, as appellate court judges, are well aware that a cold record simply does not reveal many nuances of tone and mannerism. The opportunity to observe is, after all, one of the reasons that appellate courts routinely defer to the trier of fact regarding certain types of findings. Mr. Hardy's jury, unlike the jury in *Mattox*, did "observe" the witness, at least in the same sense that over 100 million Americans observe the Super Bowl. They saw a videotape of the little girl as she testified. Since the tape was not made a part of the record in this proceeding, we cannot evaluate its quality. However, Hardy has not argued in this appeal that the tape was of poor quality or that the jury's ability to hear or observe the witness as she testified was hampered in significant respect. Instead, he simply asserts that any testimony not in the literal physical presence of the jury is not admissible. At a minimum, the tape allowed the jury to evaluate the child's credibility using whatever cues were available from her facial expression and tone of voice, both of which the jury could observe. The jury could presumably see, for example, if the little girl was sweating profusely or fidgeting nervously. In other words, the jury did get the chance to observe her demeanor as it heard her testimony. They had the right to believe it.

Moreover, *Craig* also undermines the petitioner's demeanor argument. In *Craig*, the court noted that the jury could observe the demeanor of the child during the testimony. *Craig*, —— U.S. at ——, 110 S.Ct. at

3166. We find it noteworthy that the Court specifically declined to hold that a person testifying over a video monitor is out-of-court for purposes of the Confrontation Clause. *Id.* at ——, 110 S.Ct. at 3167. Surely, if the opposite result were dictated by existing precedent the Court would have at least mentioned the existence of such precedent. We take the Court's unwillingness to hold this as an indication that the issue is still unsettled. For purposes of judging demeanor, contemporaneous transmission has exactly the same weaknesses as videotape. Thus, we believe that a conscientious state court, acting in good faith, could have, at the time of Hardy's conviction, decided this issue either way.

V

We therefore conclude that, while the opportunity to observe the witness at trial is one value protected by the Confrontation Clause, the rule in favor of having all witnesses testify at the trial in the courtroom itself is not and never has been absolute. At the time of Hardy's conviction, there were no cases directly on point. However, the case law did indicate that the defendant's interest in having the trier of fact observe the actual testimony could be overcome in certain circumstances, such as dying declarations. Here, the defendant did have the opportunity to cross-examine the witness, an important factor in *Green.* Furthermore, the jury had an opportunity to observe the testimony, albeit on a tape-delayed basis. And the subsequent Confrontation Clause cases indicate that much more significant intrusions of Confrontation Clause rights are acceptable. Moreover, in analyzing this issue we must bear in mind that the purpose of federal habeas relief is to assure conformity with constitutional norms as understood at the time of conviction. Thus, we conclude that the claim that he asserts was not dictated by existing precedent and that he therefore proposes a new rule of constitutional interpretation.

VI

■ We therefore turn to the next issue—whether this case fits into either exception to the rule against applying decisions retroactively in habeas cases. The first exception to this general rule is when a new rule places certain conduct beyond the scope of the criminal law. *Teague,* 489 U.S. at 303, 109 S.Ct. at 1071. This exception, as the Supreme Court explained in *Penry v. Lynaugh,* 492 U.S. at ——, 109 S.Ct. at 2952–53, includes those both the situation where a type of conduct is placed beyond the reach of government and the situation where a class of persons is placed beyond the reach of a certain type of punishment. Thus, the Court indicated that if it were to rule that mentally retarded persons could not be executed, the rule would fall under this exception and would be applied retroactively. *Id.* at ——, 109 S.Ct. at 2953. This exception is clearly not implicated in this case. Even if we were to accept Hardy's arguments, they would not, by any stretch of the imagination, place his conduct beyond the scope of the criminal law. Nor would his argument place him within a class of persons who could not be punished in this particular manner.

■ The second exception to the general rule against applying new rules retroactively is for " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle,* —— U.S. at ——, 110 S.Ct. at 1263 (1990). While the Confrontation Clause is important, the interest that Hardy seeks to vindicate does not rise to this level. The most common example of a case that would fall under this exception is the landmark case of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the case that guaranteed the right to counsel to criminal defendants in state trials. *Saffle,* —— U.S. at ——, 110 S.Ct. at 1264.

Thus, we conclude that the petitioner's claim would not, if accepted, be applied retroactively, and we therefore need not reach the merits of his case.

VII

■ The petitioner also argues that the trial court misapplied the Kentucky rule of

criminal procedure that it used in order to have the victim testify by videotape. Even if the trial judge violated state rules of procedure, that is not grounds for relief on federal habeas review. *Engle v. Isaac,* 456 U.S. 107, 116, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Wallace v. Turner,* 695 F.2d 545, 548 (11th Cir.1983).

For these reasons, the ruling of the district court is AFFIRMED.