Sydney Earl Scott TAYLOR

v.

Ashbel T. WALL, in his capacity as Director of the Department of Corrections of the State of Rhode Island et al.[1]

No. 2001–258–C.A.

Supreme Court of Rhode Island.

April 30, 2003.

**1.** The applicant originally named George A. Vose, Jr. (Vose), the former director of the Rhode Island Department of Corrections, as defendant. Ashbel T. Wall (Director Wall) replaced Vose, and therefore, the caption has been changed.

Sydney Taylor, pro se Plaintiff.

Aaron L. Weisman, Asst. Attorney General, for Defendant.

Present: WILLIAMS, C.J., FLANDERS and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

The applicant, Sydney Earl Scott Taylor (Taylor or applicant), appeals from a Superior Court judgment denying his application for post-conviction relief. This case came before the Supreme Court for oral argument on March 3, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that

cause has not been shown and proceed to decide the appeal at this time. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In the early morning hours of July 19, 1985, seven-year-old Sally G. (Sally)[2] was taken from her first-floor bedroom and sexually assaulted. Within hours, Providence Police arrested Taylor after finding him hiding beneath debris in a nearby junkyard. The police brought Taylor before Sally and she immediately identified him as her assailant. Thereafter, Taylor was charged with one count each of breaking and entering, burglary, kidnapping, first-degree child molestation and obstructing a police officer.

Before trial, the state filed a motion to allow Sally to testify against Taylor on videotape in lieu of her live testimony pursuant to G.L.1956 § 11–37–13.2. After hearing evidence about the need for invoking § 11–37–13.2, the trial justice found that Sally would suffer unreasonable mental and emotional harm if forced to personally confront Taylor. Consequently, the trial justice granted the state's motion. The trial justice determined that Sally's testimony would be prerecorded and subsequently shown to the jury at trial. When the tape was made, Sally was in a room with her mother, the trial justice, the prosecutor, defense counsel and a stenographer. Taylor remained in a separate room, but was able to communicate electronically with his attorney the entire time. Pursuant to § 11–37–13.2, Taylor was able to cross-examine Sally as if she were testifying at trial. He also was able to view and hear Sally's testimony on a color moni-

tor as it was recorded. After the tape was made, the trial justice and both attorneys viewed it and agreed that it was an accurate recording. When the tape was played for the jury, "the trial [justice] instructed [them] that they were not to draw an inference of guilt or that the victim needed physical protection from defendant because the testimony was presented on videotape." *State v. Taylor,* 562 A.2d 445, 456 (R.I.1989).

The jury convicted Taylor on all counts, except breaking and entering. Thereafter, Taylor directly appealed to this Court, arguing, *inter alia,* that the method by which Sally testified against him deprived him of his right of confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See Taylor,* 562 A.2d at 451. This Court held that the above-described procedure fell within an exception to the general right of face-to-face confrontation and affirmed the conviction. *See id.* at 453, 457.

In 1999, Taylor filed an application for post-conviction relief. To support his application, he asserted three reasons why he was entitled to post-conviction relief. First, he alleged that the trial justice made a prejudicial comment to the jury that "compromised his right of confrontation and presumption of innocence." Second, the applicant asserted that Sally should not have been permitted to testify outside of his presence because the trial justice did not make an express finding that she would be traumatized by his presence. Finally, he argues that he was deprived of his right to contemporaneously cross-examine Sally. To support his latter two arguments, the applicant relies solely on *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), which was decided nearly one year after this Court

2. We have changed the victim's name to Sally. "Sally" also was used as the victim's alias

in Taylor's direct appeal. *See State v. Taylor,* 562 A.2d 445, 447 (R.I.1989).

denied his direct appeal. A Superior Court hearing justice denied the application and the applicant timely appealed. For the reasons set forth below, we affirm.

## II

### Post–Conviction Relief

■ This Court will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings. *See Bleau v. Wall*, 808 A.2d 637, 641 (R.I. 2002). We will, however, "review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Id.* at 641–42. Nevertheless, "[f]indings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a *de novo* standard is applied to the issues of constitutional dimension." *Id.* at 642 (quoting *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002)).

■ The applicant contends that he is entitled to post-conviction relief because the trial justice made a comment that "taint[ed] the minds of the trier of fact" and "compromised his right of confrontation and presumption of innocence." According to the applicant, the trial justice stated that the videotape was "for the child's protection." This argument is barred by the waiver rule set forth in G.L.1956 § 10–9.1–8.

■ Section 10–9.1–8 provides in pertinent part:

"Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

This Court has held that § 10–9.1–8 "codifies the doctrine of *res judicata* as applied to petitions for post-conviction relief." *State v. DeCiantis*, 813 A.2d 986, 993 (R.I. 2003). *Res judicata* bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them. *See Carillo v. Moran*, 463 A.2d 178, 182 (R.I.1983); *see also Ouimette v. State*, 785 A.2d 1132, 1138 (R.I. 2001) (enumerating the elements of *res judicata* as: "(1) identity of the parties; (2) identity of the issues; (3) identity of the claims for relief; and (4) finality of the judgment"). The applicant's challenge to the trial justice's comment is barred by the doctrine of *res judicata*. Although the applicant's direct appeal was against the state and the instant action is against Director Wall, we are satisfied that the director and the state are the same for purposes of § 10–9.1–8. Further, the applicant could have, but failed to present this issue in his direct appeal. Accordingly, we will not consider the trial justice's allegedly prejudicial comment as grounds for granting Taylor's application for post-conviction relief.

The applicant's remaining arguments relate to the manner in which Sally testified at his trial. According to the applicant, the invocation of § 11–37–13.2 was prohibited under the Sixth Amendment as described in *Craig*. Although Taylor's Sixth Amendment claims were considered and rejected by this Court on his direct appeal, we hesitate to dispose of them on *res*

*judicata* grounds without further discussion.

■■■ Typically, a court will consider a petition for collateral review of a criminal conviction under the "constitutionally mandated criminal procedure at the time the defendant's conviction became final." *Pailin v. Vose*, 603 A.2d 738, 742 (R.I.1992). A subsequently decided case that announces a new rule of criminal procedure will not be retroactively applied to a case on collateral review unless it falls within one of two narrowly construed exceptions. *See id.* Under the first exception, a new rule may apply retroactively if it is one "that place[s] an entire category of primary conduct beyond the reach of the criminal law or that prohibit[s] imposition of a certain type of punishment for a class of defendants because of their status or offense." *Id.* at 741 (citing *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334, 356 (1989) (plurality opinion)). The second exception "applies to new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceedings." *Id.* Under this exception, "a new rule must not only improve the factfinding procedures at trial but it must also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Id.* (quoting *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193, 211 (1990)). If *Craig* announced a new rule that fell within either of these two exceptions, there would be adequate grounds to permit Taylor to rely on that case in his application for post-conviction relief. *See* § 10–9.1–8 (providing an exception to *res judicata* "in the interest of justice").

In *Craig*, the Supreme Court specifically identified an exception to the right of face-to-face confrontation under the Sixth Amendment. In that case, Sandra Ann Craig (Craig) was charged with child abuse, first-and second-degree sexual offenses, perverted sexual practice and assault and battery of a six-year-old girl. Before trial, the trial justice found the named minor-victim and three other allegedly victimized children competent to testify and granted the state's motion to allow them to testify against Craig outside of her presence pursuant to a Maryland state statute. Pursuant to the statute, each child, the prosecutor and Craig's defense counsel withdrew to a separate room, while Craig, the judge and the jury remained in the courtroom. In the separate room, the child witnesses, without seeing Craig, were then examined and cross-examined while the interaction was recorded and displayed to the people in the courtroom. While the children testified, Craig was able to electronically communicate with defense counsel, and objections could be made and ruled on as if the witness were testifying in the courtroom. The jury convicted Craig on all counts.

The Court reviewed the above-described procedure and held that it did not violate Craig's right of confrontation under the Sixth Amendment. *See Craig*, 497 U.S. at 857, 110 S.Ct. at 3170, 111 L.Ed.2d at 686. In reaching this conclusion, the Court held that the desire to shield a minor-victim of a sexual crime from trauma and embarrassment sufficiently justifies the use of a procedure by which a child may testify against a defendant without face-to-face confrontation. *See id.* at 853, 110 S.Ct. at 3167, 111 L.Ed 2d at 683. Such a procedure, however, may be used only upon a case-specific finding of necessity. *Id.* at 855, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. Specifically, before permitting a child witness to testify via an alternate procedure, the trial court must hear evidence and determine whether the proposed method for testifying is necessary to protect the

welfare of the child witness. *See id.* at 856, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. That finding must be based on the determination "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. * * * Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimus* * * *." *Id.*

Once these findings have been made, "the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation." *Id.* at 857, 110 S.Ct. at 3170, 111 L.Ed.2d at 686. Because the child witnesses in Craig testified under oath, were subject to cross-examination and were observed by the judge and jury, the use of the alternate procedure was not prohibited under the Sixth Amendment. *See id.*

■ The applicant points to two aspects of Sally's testimony that he asserts contradict *Craig.* First, he asserts that the trial justice permitted Sally to testify pursuant to § 11–37–13.2 without making the required finding that testifying in his presence would traumatize her. That assertion simply is unsupported by the facts. The record presented to this Court does not contain a transcription of the trial justice's discussion concerning the use of § 11–37–13.2. However, as this Court pointed out in the applicant's direct appeal, "[t]he trial [justice] found that * * * Sally unequivocally would suffer unreasonable and unnecessary mental and emotional harm if required to testify in defendant's presence." *Taylor,* 562 A.2d at 450. We are convinced that the trial justice's findings satisfied the *Craig* requirements for invoking § 11–37–13.2.

■ The applicant also contends that *Craig* demonstrates that he was deprived of his right to effectively confront Sally because the tape was not shown to the jury as it was created. According to the applicant, the delayed display of the tape denied him the opportunity to contemporaneously cross-examine Sally. We disagree. Although the procedure reviewed in *Craig* was a live broadcast of the child-victims' testimony, the constitutionality of the procedure did not hinge on that aspect. We are satisfied that the procedures used at the applicant's trial preserved the essence of effective confrontation.

■ Pursuant to § 11–37–13.2, Sally testified under oath and was subject to cross-examination by Taylor's counsel. Although the tape of Sally's testimony was prerecorded, Taylor has utterly failed to demonstrate how the delayed broadcast prejudiced him. A delay may be prejudicial if a defendant is unable to reexamine a witness on a matter that arose between the time the tape was made and the time it is displayed to the jury. However, there is no evidence that Taylor unsuccessfully tried to reexamine Sally on such issues in this case. Moreover, as the Sixth Circuit Court of Appeals has pointed out, a criminal defendant probably derives substantial benefit from the delayed broadcast of a witness's taped testimony. *See Hardy v. Wigginton,* 922 F.2d 294, 300 (6th Cir. 1990). The applicant's attorney was able to hear and cross-examine the state's key witness even before opening statements were made. Moreover, by displaying a recorded version of the testimony, the applicant could assure that the jury never would hear any objectionable testimony proffered by Sally. If anything, these aspects of tape-delayed testimony would help, rather than hinder, the applicant's case. Further, although the broadcast was delayed, the videotape gave the jury

the opportunity to view Sally's demeanor as she testified. Thus, the jurors were able to take her physical mannerisms into account when they assessed her credibility. Accordingly, we hold that the delayed broadcast of Sally's testimony did not deprive the applicant of his Sixth Amendment right of confrontation.

 Finally, even if *Craig* did create a new rule that supported the applicant's position, it would not fall within either of the two exceptions allowing it to be retroactively applied. *Craig* certainly did not prohibit the criminalization of, or punishment for, any of the acts for which the applicant was convicted. *See Pailin,* 603 A.2d at 741. Further, although the rules posited in *Craig* are of great importance, they did not " 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Id.* (quoting *Sawyer,* 497 U.S. at 242, 110 S.Ct. at 2831, 111 L.Ed.2d at 211). Rather, that case merely confirmed our conclusion in the applicant's direct appeal. Thus, *Craig* does not retroactively apply to this case on collateral review.

### Conclusion

For the foregoing reasons, Taylor's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers in the case are to be returned to the Superior Court.