David GORDON

v.

STATE of Rhode Island.

No. 2009–67–Appeal.

Supreme Court of Rhode Island.

April 11, 2011.

Mark B. Laroche, Esq., Providence, for Applicant.

Aaron L. Weisman, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

David Gordon (applicant) appeals from the denial of his application for postconviction relief by a magistrate of the Superior Court. As grounds for his appeal, he contends that (1) the magistrate did not have constitutional authority to preside over his postconviction-relief proceedings; and (2) the state failed to disclose certain inducements given to a codefendant in return for her testimony against the applicant. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After reviewing the record and considering the parties' written and oral submissions, we are satisfied that this appeal may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Procedural History

The facts underlying applicant's convictions are set forth more fully in *State v. Gordon*, 880 A.2d 825 (R.I.2005). Around November 1995, Mr. Gordon's codefendant, Lorraine Holman, began corresponding with Mr. Gordon through her church's pen-pal program while he was an inmate at the Adult Correctional Institutions (ACI). *Id.* at 828–29. Ms. Holman soon began visiting Mr. Gordon at the ACI. *Id.* at 829. Mr. Gordon then started to pressure her to take out a home equity loan so that the two of them could "buy a business." *Id.* On April 10, 1996, the day Mr. Gordon was released from prison, Ms. Holman gave him a gift of $25,000 with which to purchase a business, but he told her that he needed more money and began suggesting ways that she could start a fire in her home. *Id.*

Ms. Holman ultimately was persuaded to participate in Mr. Gordon's scheme to burn down her home for the insurance proceeds. *See Gordon*, 880 A.2d at 829–30. On the morning of June 5, 1996, Mr. Gordon telephoned her and told her: "This is the day. This is it." *Id.* As Ms. Holman was returning home from work later that day, she was stopped by the fire chief

and informed that her house was on fire. *Id.* at 830.

After a violent incident between Ms. Holman and Mr. Gordon, Ms. Holman decided to come forward and confess, and on July 9, 1996, she gave two statements to the Foster Police Department. *Gordon,* 880 A.2d at 830. Mr. Gordon and Ms. Holman both were arrested on July 10, 1996. *Id.* at 830–31. They were arraigned in the Sixth Division District Court on July 11, 1996, and both were held without bail. Subsequently, Ms. Holman filed a petition for writ of habeas corpus, and on July 19, 1996, the District Court set bail for her at $20,000 with surety. On the same day, Ms. Holman posted $2,000 and was released. In *Gordon* we observed that Ms. Holman testified that "she was held at the ACI's intake center for eight days and that she was released after she agreed to cooperate with the prosecution." *Id.*

Subsequently, in February 1997, Mr. Gordon and Ms. Holman each were arraigned in Superior Court for first-degree arson, conspiracy, and insurance fraud. Mr. Gordon again was held without bail. A bail of $20,000 with surety again was set for Ms. Holman; the $2,000 that she previously had posted was transferred from the District Court to the Superior Court, and she was released.

On August 7, 1997, Ms. Holman entered into a formal cooperation agreement with the state. The agreement provided that, "[i]n exchange for the past cooperation and continued full cooperation and truthful testimony of [Ms.] Holman in connection with prosecution of all criminal cases brought as a result of the fire," the state would allow her to plead nolo contendere to conspiracy, insurance fraud, and to an amended charge of third-degree arson. Additionally, the state would recommend suspended sentences of ten years on the conspiracy charge, one year on the fraud charge, and twelve years on the third-degree arson charge, as well as "reasonable restitution[,] to be determined by a Special Master." Ms. Holman pled nolo contendere, and a Superior Court justice sentenced her in accordance with these recommendations. On November 24, 1997, she was ordered to pay restitution in the amount of $5,000, "pending [the] outcome of co-defendant's case." This restitution order was equivalent to the amount of money Ms. Holman's insurance company had advanced to her on account of the fire.

On July 2, 1998, a presentment report was prepared, stating that "[Ms. Holman] has paid $2,500 in restitution; restitution has been fixed at $5,000. She is waiting for the outcome of her co-defendant's trial in order to determine if she owes any further restitution. Restitution is ordered on [the insurance-fraud count]. Probation expires on this Count on 8/07/98." The state then filed a probation-violation report pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure. Ms. Holman was presented as a violator on September 15, 1998, and the Superior Court noted that the "[v]iolation [was p]ending." The violation was withdrawn on July 14, 1999. Meanwhile, from 1998 through 2002, the restitution balance repeatedly was reviewed and the matter was continued, awaiting the outcome of Mr. Gordon's case.

In the interim, on March 26, 1998, the state was ordered to provide Mr. Gordon with "any and all co-operation agreements or other memorandum [*sic*] of the promises, inducements and rewards made to [Ms.] Holman." The record indicates that the state previously had delivered a copy of the August 7, 1997 cooperation agreement to Mr. Gordon, and Mr. Gordon acknowledged that he received it.

Following a trial, on October 1, 2002, a jury found Mr. Gordon guilty of first-de-

gree arson, conspiracy, and insurance fraud. He was sentenced to an eighty-year term for the arson conviction, with forty years to serve and the balance suspended, with probation; ten years on the conspiracy conviction, running concurrently; one year on the fraud conviction, also running concurrently; and he was charged with $2,500 in restitution. On September 1, 2005, this Court affirmed his convictions. *Gordon,* 880 A.2d at 839.

Subsequently, on March 8, 2006, Ms. Holman's restitution obligation was modified from $5,000 to $2,500, and it was documented as being paid in full.

On August 28, 2006, Mr. Gordon filed a *pro se* application for postconviction relief in Superior Court. In his application, Mr. Gordon argued that the state failed to disclose material impeachment evidence, including: (1) that Ms. Holman was given bail and released from custody as an inducement for her cooperation against applicant; (2) that the state had filed arrest warrants against Ms. Holman for failing to pay restitution; and (3) that the state had reduced the restitution owed by Ms. Holman from $5,000 to $2,500.[1]

On January 9, 2007, Mr. Gordon's application for postconviction relief was assigned to a magistrate, who was acting as a justice of the Superior Court pursuant to an authorization from the then Chief Justice of this Court under G.L.1956 § 8-15-3.1.[2] The authorization designated the aforementioned magistrate with all of the authority and powers vested in a Superior Court justice, from January 1, 2007, through January 31, 2007. This authorization was renewed monthly, and remained in effect through July 31, 2007.[3]

On September 7, 2007, applicant filed a motion in Superior Court to recuse the magistrate. The applicant argued at a hearing that, under G.L.1956 § 8-2-39,[4] postconviction-relief matters were "outside the scope" of a magistrate's duties and powers. In response, the magistrate stated that "this matter was referred to [him] when [he] was assigned and sitting as an associate judge of this court by order of the Chief Justice." He further explained that:

"[u]nder that authority and under the specific statute, * * * [he had] all of the powers, duties, etcetera [*sic*] of a Superior Court judge during the period up to and including August 1st. Subsequent to August 1st and in accordance with the order, [he] was authorized to complete by virtue of all of the orders all matters that were pending before [him]."

---

1. The applicant also argued that he was provided with ineffective assistance of counsel and that his rights for compulsory process of evidence had been violated, but he later withdrew those claims.

2. At the time, G.L.1956 § 8-15-3.1, as amended by P.L.2003, ch. 200, § 1, provided:
   "The Chief [J]ustice of the [S]upreme [C]ourt has the power to assign any magistrate of the [S]uperior [C]ourt, [F]amily [C]ourt, and/or [D]istrict [C]ourt to any court of the unified judicial system with the consent of the presiding justice and/or chief judge of the relevant courts in the same manner as a judge may be assigned pursuant to chapter 15 of this title. When a magistrate is so assigned, he or she shall be vested, authorized, and empowered with all the powers belonging to the justices and/or magistrates of the court to which he or she is specially assigned."
   Section 8-15-3.1 has since been amended to eliminate the Chief Justice's authority to vest a magistrate with the powers of a justice. *See* P.L.2007, ch. 73, art. 3, § 10.

3. The applicant acknowledges that the authorizations were properly promulgated through the office of the Rhode Island Secretary of State.

4. On appeal, applicant states that the citation in his pleading was to the "incorrect statute."

He noted that this matter had indeed been on his docket numerous times before August 1, and he accordingly denied the motion to recuse.

After that denial, on September 18 and 19, 2007, the magistrate heard arguments on Mr. Gordon's application for postconviction relief. The applicant argued that although he had received a copy of the cooperation agreement before trial the document failed to include, and the state failed to disclose, three inducements given to Ms. Holman. The applicant insisted that the state's allegedly intentional failure to disclose these inducements warranted a new trial.

The first such alleged inducement was the state's withdrawal of its objection to Ms. Holman's bail in District Court. To prove this inducement existed, applicant relied on an affidavit from a former special assistant attorney general,[5] the petition for writ of habeas corpus, and the District Court docket entry that applicant said showed that "on July 19th the [s]tate [withdrew its] objection to bail, $20,000 with surety by agreement."[6] The applicant also noted that *Gordon* observed that Ms. Holman had testified that she was held at the ACI for eight days and was released after she agreed to cooperate. The applicant believed that, collectively, these documents demonstrated that Ms. Holman was released on bail as an inducement for her testimony at applicant's bail hearing and trial.

In response, the state argued that there was no evidence showing it had deliberately withheld information, and it claimed that applicant was aware at the bail hearing stage that Ms. Holman was cooperating and had been released. At the bail hearing, the prosecutor had stated that Ms. Holman "sits here released on bail." Furthermore, during trial, Ms. Holman testified that she had been released. The state argued that, although the former special assistant attorney general "apparently did neglect to include the [s]tate's withdrawal of objection to bail in the cooperation agreement," this did not prejudice applicant because the bail information was available to him through these other two aforementioned instances.

Next, applicant argued that the state failed to disclose the probation violation filed against Ms. Holman as well as the subsequent withdrawal of that violation. The applicant asserted that the withdrawal eliminated the "requirement that [Ms. Holman] had to fulfill her $5,000 restitution payment" and that it should have been disclosed. Third, he argued, "part and parcel" with the previous nondisclosure, that Ms. Holman was given a financial inducement in the form of a "$2,500 restitution waiver," which also was not disclosed. He explained that Ms. Holman "testified against him in December of 2002, and four years later her restitution [was] cut in half. And [he] suggest[ed] to the Court that that was a $2,500 direct finan-

---

**5.** The affidavit, dated July 9, 2007, states in pertinent part:

"Without having reviewed the [s]tate's file containing my notes in that matter my best recollection, and in keeping with my practice at that time, I would have withdrawn's [*sic*] the [s]tate's objection to setting of bail for [Ms.] Holman based upon the parties agreement that she would cooperate and testify in all aspects of the crimi-

nal prosecution against her co-defendant * * *."

The magistrate commented that "[t]he Court would give that affidavit the weight that it deserves[,] taking into consideration the failure to review notes and best recollection, that is some 11 years old, and the fact [that she said] 'I would have,' not 'did.' "

**6.** Part of the docket entry was illegible to both the magistrate and applicant's counsel.

cial inducement for her to help the [s]tate gain his conviction."

The state argued, in response, that it was the special master who chose to allocate the restitution evenly between the codefendants; because the state played little or no role in setting the restitution, it could not be characterized as a reward or inducement.

On February 15, 2008, the magistrate issued a bench decision denying Mr. Gordon's application for postconviction relief. In regard to the bail disclosure, the magistrate found that applicant "was aware his codefendant was released, and there was no evidence produced or shown * * * that [Ms. Holman] was promised or given a reward or inducement of bail." He concluded that "the attorney general's withdrawal of an objection to bail was not an inducement or promise or reward for bail hearing testimony to deny [applicant's] release." The magistrate further noted that even if such an agreement had existed, it was covered by the cooperation agreement that was disclosed.

Concerning the restitution issue, the magistrate found that the probation violation "was brought in accordance with the holdings of our Supreme Court indicating that if the [s]tate did not bring this action within a specified period of time[,] namely, the sentence of [Ms. Holman], the [s]tate would lose all of [its] right to collect any of the money * * *." He found that "[t]he presentment was clear that no amount of restitution had been forgiven. It was not until [March 8,] 2006[,] that restitution was modified by the magistrate of this court, and that was after the defendant's conviction * * *." The magistrate explained that "it is not unusual and is rather the practice" that a magistrate modify the restitution if a codefendant is convicted. He further explained that "[t]he restitution order was joint and several." Accordingly,

upon applicant's conviction, he became "jointly and severally liable for the same $5,000"; his obligation was "cut in half by virtue of [Ms.] Holman's involvement," and likewise, Ms. Holman ultimately was obligated to "pay[ ] the full amount of 50 percent of the total loss." The magistrate thus denied the application for postconviction relief.

A final judgment reflecting this decision was entered on November 24, 2008, from which applicant timely appealed.

## II

### Standard of Review

■ "[P]ost-conviction relief is available to a defendant convicted of a crime who contends that his original conviction or sentence violated rights that the state or federal constitutions secured to him." *Young v. State*, 877 A.2d 625, 628 (R.I. 2005); *see also* G.L.1956 § 10–9.1–1(a)(1). "This Court will not disturb a trial justice's factual findings made on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I.2005) (quoting *Taylor v. Wall*, 821 A.2d 685, 688 (R.I. 2003)). "This Court will, however, 'review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Id.* (quoting *Taylor*, 821 A.2d at 688).

## III

### Discussion

#### A

##### Magistrate's Authority

■ On appeal, applicant argues that § 8–15–3.1, which allowed the magistrate

to exercise all the authority and powers vested in a Superior Court justice, created a "de facto judgeship" that violated article 10, section 4, of the Rhode Island Constitution.[7]

■ We need not, however, address this constitutional challenge to the magistrate's authority because it is clear to us that applicant has failed to preserve the issue for appellate review. The applicant admits on appeal that his motion to recuse was limited to a challenge of statutory authority; he contends, rather, that the magistrate raised the constitutional issue *sua sponte,* thus releasing him from the raise-or-waive doctrine.[8] We disagree. At no point did the magistrate address or defend his power on constitutional grounds, or raise this issue of a potential constitutional infirmity. This Court recently declined to hear this very same constitutional argument when a postconviction-relief applicant failed to raise it before the magistrate below. *See Yates v. Wall,* 973 A.2d 621, 623 (R.I.2009) (mem.). We discern no reason to treat Mr. Gordon's argument any differently.

■ The applicant alternatively relies on an exception to the raise-or-waive rule, arguing that this matter "constitutes an issue of constitutional dimension derived from a novel rule of law." To qualify for this exception, "the alleged error must be more than harmless, and the exception must implicate an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of trial." *State v. Breen,* 767 A.2d 50, 57 (R.I.2001). The issue here does not involve a novel rule of law, nor did applicant indicate how counsel could not reasonably have known of it earlier. As such, this case does not fit within the exception, and we conclude that the issue was not properly preserved for appeal.

## B

### Failure to Disclose Bail Inducement

■ The applicant next argues that the state failed to reveal the withdrawal of its objection to Ms. Holman's release on bail, in exchange for her testimony at his bail hearing and trial, and that this undisclosed inducement violated the obligation of full disclosure set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The applicant contends that the evidence he presented "clearly and convincingly establishes" that the state had a *quid pro quo* agreement to withdraw its objection to Ms. Holman's bail in return for her testimony at applicant's bail hearing and trial; he further contends that the nondisclosure of this agreement "prevented [him] from establishing [Ms.] Holman's freedom on bail/liberty inducement to the jury." He insists that the magistrate was clearly wrong in finding that "no evidence" of such an agreement existed. He further asserts that the August 7, 1997 cooperation agreement does not disclose this agreement to withdraw the objection to bail and that the magistrate's alternative finding that it was included in the cooperation agreement was both contradictory and clearly wrong.

■ In accordance with *Brady,* 373 U.S. at 87, 83 S.Ct. 1194, this Court has

---

**7.** Article 10, section 4, of the Rhode Island Constitution requires that the Governor "fill any vacancy of any judge of the Rhode Island Superior Court."

**8.** Pursuant to the "raise-or-waive" rule, it is not our practice to consider an issue on appeal that has not properly been presented before the trial court. *State v. Bido,* 941 A.2d 822, 828–29 (R.I.2008); *State v. Breen,* 767 A.2d 50, 57 (R.I.2001).

recognized that "if a prosecutor has suppressed evidence that would be favorable to the accused and the evidence is material to guilt or punishment, the defendant's due-process rights have been violated and a new trial must be granted." *State v. McManus,* 941 A.2d 222, 229–30 (R.I. 2008). "In the case of an inadvertent nondisclosure, however, *Brady* is not implicated." *McManus,* 941 A.2d at 230. When this occurs, "we need consider only whether there was procedural prejudice to the opposing party." *Id.* To demonstrate sufficient prejudice, a defendant "must show there is a significant chance that the use and development of the withheld evidence by skilled counsel at trial would have produced a reasonable doubt in the minds of enough jurors to avoid a conviction." *Id.* (quoting *State v. Brisson,* 619 A.2d 1099, 1103 (R.I.1993)).

Although we afford the magistrate's factual findings great deference, we believe it is necessary to disturb his findings here. In light of the affidavit of the former special assistant attorney general and the state's own verbal concession that she "apparently did neglect to include the [s]tate's withdrawal of objection to bail in the cooperation agreement," we conclude that the magistrate erred in finding that there was "no evidence" of an agreement concerning Ms. Holman's bail release.

Although applicant does not specifically articulate the remedy to which he claims entitlement, he refers us to our opinions in *State v. Wyche,* 518 A.2d 907 (R.I.1986), and *State v. Evans,* 668 A.2d 1256 (R.I. 1996). We observe, however, that unlike in *Wyche,* 518 A.2d at 910–11, where there was a purposeful withholding of information, there is nothing in the record of the instant case indicating that this was a deliberate nondisclosure. Rather, it appears to have been, at most, an inadvertent or negligent nondisclosure in contravention of Rule 16 of the Superior Court Rules of Criminal Procedure.[9] Thus, we need not consider due-process concerns as set forth in *Brady.* Our focus need only be on the extent of prejudice to applicant. *See McManus,* 941 A.2d at 230. We undertake this analysis mindful that applicant knew Ms. Holman had been released on bail after she agreed to cooperate with law enforcement.

In examining prejudice, we acknowledge that in *Evans,* 668 A.2d at 1258–60, this Court did find negligent nondisclosures sufficiently prejudicial to warrant a new trial. Those nondisclosures, which were not revealed until midtrial, consisted of a complete failure to divulge any of the promises and inducements made to the primary witness as well as a failure to provide a complete criminal record of the witness. *Id.* In contrast, in this case, applicant was provided with the detailed cooperation agreement between Ms. Holman and the state, which he was able to present at trial and use to impeach Ms. Holman. Although the agreement failed to address the state's withdrawal of its objection to Ms. Holman's bail, this Court does not believe that the additional factor that she was released on bail because of her cooperation "would have produced a reasonable doubt in the minds of enough jurors to avoid a conviction." *See McManus,* 941 A.2d at 230. In our opinion, this apparent inadvertent nondisclosure does not rise to the level of prejudice that would merit a new trial, and accordingly we affirm the magistrate's denial of postconviction relief on this issue.

9. Rule 16 of the Superior Court Rules of Criminal Procedure "governs the scope of the state's duty to produce evidence"; it has been described "as among the most liberal discovery mechanisms in the United States." *State v. Evans,* 668 A.2d 1256, 1259 (R.I.1996).

## C

### Failure to Disclose Probation Violation and Restitution Reduction

■ Finally, applicant argues that the state also failed to disclose its withdrawal of a probation violation against Ms. Holman and a $2,500 restitution reduction as inducements for her testimony, again violating the *Brady* doctrine.

The applicant specifically contends that the state never disclosed its withdrawal of Ms. Holman's probation violation, its "knowledge and agreement" to postpone restitution owed by Ms. Holman until after she testified at applicant's trial, or how it modified Ms. Holman's restitution obligation by $2,500, which he asserts "were clearly direct financial inducements for her to gain his conviction."

It is undisputed that after Ms. Holman's plea a special master fixed an amount of restitution at $5,000, "pending [the] outcome of co-defendant's case." Ms. Holman then paid $2,500. The state explained, on appeal, that in July 2008, before the expiration of Ms. Holman's one-year suspended sentence on the insurance-fraud count, it had to move to violate Ms. Holman on her probation to preserve her joint and several liability for the entire $5,000.

The magistrate indeed found that the violation simply was brought "in accordance with the holdings of our Supreme Court indicating that if the [s]tate did not bring this action within a specified period of time[,] namely, the sentence of [Ms. Holman], the [s]tate would lose all of [its] right to collect any of the money," and he noted that "[t]he presentment was clear that no amount of restitution had been forgiven." We believe that the magistrate did not clearly err in these findings. It cannot be said that the state's withdrawal of this procedural violation was somehow a "financial inducement" for Ms. Holman's

testimony. Accordingly, we affirm the magistrate's decision on this matter.

■ Further, it is undisputed that, upon the applicant's conviction, he was ordered to pay $2,500 in restitution. This Court affirmed his conviction in September 2005, and as a result, in March 2006, Ms. Holman's restitution obligation was reduced from $5,000 to $2,500. The magistrate observed that, although restitution is a "joint and several obligation, it is not unusual and is rather the practice" that it be modified if a codefendant is convicted. He also noted that Ms. Holman had ultimately resolved her obligation by paying one-half the full amount of restitution. The magistrate did not clearly err in his findings. There is no evidence that indicates that Ms. Holman's restitution reduction was somehow a reward or inducement to testify. Additionally, there is no evidence that shows that the prosecution had any influence over either Ms. Holman's initial restitution determination or the decision to reduce that amount. Accordingly, we affirm the magistrate's denial of Mr. Gordon's application for postconviction relief.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment denying Mr. Gordon's application for postconviction relief. The record shall be remanded to the Superior Court.