Daron S. PAILIN

v.

George VOSE, Director, Department
of Corrections.

No. 91–350–M.P.

Supreme Court of Rhode Island.

Feb. 24, 1992.

James E. O'Neil, Atty. Gen., Jane McSoley, Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

OPINION

MURRAY, Justice.

This petition for a writ of habeas corpus was brought by Daron S. Pailin (Pailin) to obtain his discharge from the allegedly unlawful custody of the respondent, George Vose, director of the Rhode Island Department of Corrections. The defendant is currently serving a sentence in the Adult Correctional Institutions for a 1987 robbery conviction that was upheld on direct appeal in *State v. Pailon,* 590 A.2d 858 (R.I.1991).[1] The basis for the instant petition is the validity of Pailin's waiver to a jury of twelve during his 1987 trial. The facts underlying the waiver are as follows.

During the voir dire examination of the jurors, counsel asked prospective panel members if anyone had ever been the victim of a violent or a nonviolent crime. One panel member, Lee Kissinger (Kissinger), responded that his brother had been the

---

1. The instant petition for writ of habeas corpus was brought on behalf of Daron S. Pailin. A review of court records reveals that petitioner is the same person whose direct appeal we denied in *State v. Pailon,* 590 A.2d 858 (R.I.1991). In that case we affirmed a Superior Court judgment of conviction entered against petitioner. Although there is a discrepancy in the spelling of petitioner's name, the record shows that the correct spelling of petitioner's name is Daron S. Pailin, and that Daron Pailon is a known alias used by petitioner.

victim of a nonviolent crime, but that he himself had never been a victim of any crime. Kissinger was subsequently impaneled, and because there were a limited number of jurors available, no alternate jurors were selected. On the morning of the second day of trial Kissinger informed the court that he had in fact been the victim of an armed robbery between five and eight years earlier. He explained that he was robbed at knife point while working at a gas station, and that he forgot the incident during the voir dire examination. Kissinger assured the court that the incident would not affect his impartiality and that he could continue as a juror and render a verdict based on the evidence presented. He further explained that as an engineer he was accustomed to considering and analyzing facts in the course of his employment. After completing the interview the trial justice afforded opposing counsel the opportunity to further question Kissinger, but both parties declined. Kissinger was sent back to the jury room, following which petitioner informed the court that if Kissinger's disclosure had been made during the voir dire examination, petitioner would have exercised a peremptory challenge to Kissinger.

Defense counsel then conferred with petitioner to determine whether petitioner wanted to move for mistrial or to challenge Kissinger. The petitioner subsequently requested that Kissinger be excused and that the trial proceed with eleven jurors. The state agreed, and although the trial justice felt that Kissinger could serve as an impartial juror, he acknowledged that under Rule 23(b) of the Superior Court Rules of Criminal Procedure "the parties may in open court stipulate in writing with the approval of the court that the jury shall consist of any number less than twelve (12)." The court then engaged petitioner in the following dialogue to ensure that petitioner was knowingly and voluntarily waiving his right to a jury of twelve:

"THE COURT: Well, again, I'm convinced this gentleman [Kissinger] can be a fair and impartial juror, but rather than run the risk, if there is an adverse finding, that an appellate court may find

or agree otherwise, and put the witnesses and the defendant through the ordeal of another trial, the Court will accept the defendant's request that we excuse Mr. Kissinger, but the rule requires—and I'll ask the defendant to please stand and have the clerk administer the oath to Mr. Pailin.

"DAREN PAILIN, after having been duly sworn, testified as follows:

"THE COURT: Now, Mr. Pailin, you have heard [defense counsel] just request the Court to excuse Mr. Kissinger and to proceed with eleven jurors?

"DEFENDANT PAILIN: Yes.

"THE COURT: You heard him state that; is that correct?

"DEFENDANT PAILIN: Yes, I have.

"THE COURT: Is that your desire, sir?

"DEFENDANT PAILIN: Yes, it is.

"THE COURT: Now, you understand, do you not, that since the State has this very heavy obligation of proving you guilty beyond a reasonable doubt and convincing twelve jurors that you are guilty beyond a reasonable doubt, that the odds, if you will, to be simple about it, are reduced from convincing twelve to convincing eleven.

"You understand that, do you not?

"DEFENDANT PAILIN: I understand.

"THE COURT: With that in mind, is it still your desire to have this juror excused?

"DEFENDANT PAILIN: Yes.

"THE COURT: Okay, very well. The Court will excuse Mr. Kissinger."

After a brief recess the trial resumed with the eleven member jury, and petitioner was found guilty of robbery. The petitioner filed an appeal with this court, and we affirmed the judgment of conviction in *State v. Pailon*, 590 A.2d 858 (R.I.1991).

Among the issues raised on direct appeal in *Pailon* was the validity of petitioner's waiver. The petitioner asserted that the waiver was ineffective because the record did not reflect that the court informed him that in waiving his right to a jury of twelve, petitioner was also waiving his right for a mistrial and his right to demand

a trial before an impartial jury of twelve. In denying the appeal, we noted that such an admonition by the trial justice would have been incorrect and misleading, and that there was:

> "no indication that the court would have acceded to a challenge for cause. No such challenge was presented, but the trial justice's comments indicate that he thought the juror would still be impartial. Consequently there was little likelihood that the mistrial option would have been available. The trial justice was given a proposal by counsel to excuse a juror whom counsel might have peremptorily challenged in the voir dire if he had known about the prior incident. The state agreed to the proposal, and defendant, after consultation with counsel, also agreed.
>
> "In our opinion, this was a voluntary and intentional waiver of a known right." 590 A.2d at 864.

■ In the instant habeas petition Pailin again raises issue with the validity of his waiver at trial. The petitioner asserts that this court's opinion in *State v. DiStefano*, 593 A.2d 1351 (R.I.1991), creates a new rule of law holding that Rule 23(a) of the Superior Court Rules of Criminal Procedure requires a writing signed by a defendant to effect a valid waiver and that the defendant should be able to retroactively benefit from this "new" holding. Consequently petitioner asserts that because of our ruling in *DiStefano*, this court should issue a writ of habeas corpus ordering petitioner's immediate release from confinement and remanding the matter for a new trial in Superior Court.

The petitioner's claim is without merit. First, our holding in *DiStefano* is not new law, and petitioner's failure to raise the writing requirement of Rule 23(b) on direct appeal is treated as a waiver of the issue.

Second, even if *DiStefano* is treated as new law, petitioner cannot benefit from the holding under the doctrine of retroactivity.

In *DiStefano* we examined the requirements to effectuate a valid jury waiver under Rule 23(a). Rule 23(a) provides in pertinent part that "Cases required to be tried by jury shall be so tried unless the defendant in open court waives a jury trial in writing with the approval of the court." In reviewing this plain language, we held that the rule mandates a separate writing signed by the defendant, and that this writing requirement is not satisfied by a trial justice's recorded colloquy with the defendant. 593 A.2d at 1352. This decision was not a departure from existing law; rather, it was merely an affirmation that the "clear and unambiguous rule in this jurisdiction requiring a written jury waiver must be adhered to strictly." *Id.*

In his petition, Pailin mischaracterizes *DiStefano* as creating new law. Relying upon this mischaracterization, petitioner asserts that had *DiStefano* been decided prior to his direct appeal, he would have benefited from Rule 23's express writing requirement because the trial justice did not require him to sign a separate written waiver. Because we find that *DiStefano* does not create new law, the written-waiver requirement is the same today as it was the day of petitioner's trial. Accordingly, even if the trial justice erred in not requiring a separate writing, the issue should have been raised on direct appeal and petitioner's failure to raise the error on appeal is deemed to be a waiver of this issue. *State v. Feng,* 421 A.2d 1258, 1272 (R.I.1980); *State v. Giorgi,* 115 R.I. 1, 5, 339 A.2d 268, 271 (1975); *State v. Jamgochian,* 109 R.I. 46, 48, 280 A.2d 320, 322 (1971); *F. Gilbane, Inc. v. Noel,* 87 R.I. 40, 41, 137 A.2d 531, 532 (1958).[2]

---

2. Even if the waiver issue is properly before us, it is subject to the harmless-error doctrine. *See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Smith,* 446 A.2d 1035 (R.I.1982); *State v. Robalewski,* 418 A.2d 817 (R.I.1980). Because the trial justice found that Kissinger could serve as an unbiased juror, we find that his dismissal at petitioner's request was a benefit bestowed on petitioner, and that the failure to have petitioner sign a writing acknowledging his informed and voluntary consent to a benefit requested and received is harmless error beyond a reasonable doubt.

Assuming *arguendo* that *DiStefano* in fact creates new law, we take this opportunity to review Pailin's petition under the doctrine of retroactivity in light of the Supreme Court's recent decisions in *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990); *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), and *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In general, Rhode Island criminal cases involving retroactive or prospective application of a new rule focus on the same issues as federal cases. *Ondis v. Pion*, 497 A.2d 13, 16 (R.I.1985). Under this analysis we have resolved questions of retroactivity in criminal proceedings under the criteria set forth in *Linkletter v. Walker*, 381 U.S. 618, 636–37, 85 S.Ct. 1731, 1741–42, 14 L.Ed.2d 601, 612–13 (1965). *See State v. Porter*, 437 A.2d 1368, 1372 (R.I.1981); *see generally Ondis*, 497 A.2d at 16–17. The *Linkletter* analysis requires us to consider "(1) the purpose of the new rule, (2) the extent of reliance by law-enforcement authorities on the old doctrine, and (3) the effect of retroactive application on the administration of justice," and among these factors, the purpose of the new rule is most important. *Porter*, 437 A.2d at 1372.

In a recent series of decisions the Supreme Court effectively overruled *Linkletter* and introduced a new framework to address issues of retroactivity concerning constitutional changes in criminal procedure. First in *Griffith* the Court held that all cases pending on direct review should benefit from retroactive application of a new rule of criminal procedure. The Court stated that

"[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661.

Two years later in *Teague v. Lane*, the Court distinguished cases pending before courts on direct review from cases pending before courts on collateral review. Under *Teague* the threshold issue in determining retroactivity is whether a decision announces a new rule of law, defined as one that "breaks new ground or imposes a new obligation on the States or the Federal Government," or that is "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349. Once a court finds that a case announces a new rule, it may apply the rule in habeas corpus proceedings only if the rule falls within one of two narrow exceptions. *Sawyer*, 497 U.S. at ——, 110 S.Ct. at 2831, 111 L.Ed.2d at 211. The first exception applies to rules that place an entire category of primary conduct beyond the reach of the criminal law or that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075, 103 L.Ed.2d at 356. The second exception applies to new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding. *Id.* Under the second exception a new rule must not only improve the factfinding procedures at trial but it must also " 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Sawyer*, 497 U.S. at ——, 110 S.Ct. at 2831, 111 L.Ed.2d at 211.

The following year the Court fully adopted the *Teague* analysis in *Sawyer v. Smith, supra.* In *Sawyer* the Court found that the defendant's habeas petition was based on a new rule of criminal procedure, but that this rule did not satisfy either of *Teague*'s narrow exceptions and therefore could not be applied retroactively. In affirming the lower court's denial of the defendant's habeas petition, the Court explained that

"The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered. This is but a recognition that the purpose of federal habeas corpus is to ensure that state convictions

comply with the federal law in existence at the time the conviction became final, and not to provide a mechanism for the continuing reexamination of final judgments based upon later emerging legal doctrine." —— U.S. at ——, 110 S.Ct. at 2827, 111 L.Ed.2d at 206.

The net effect of *Teague* and *Sawyer* is that federal courts review petitions for collateral review under the constitutionally mandated criminal procedure at the time the defendant's conviction became final. A defendant is entitled to retroactive application of a subsequent beneficial ruling only if the ruling falls within one of *Teague*'s two narrowly construed exceptions.

In adopting *Griffith, Teague,* and *Sawyer,* we note that a Rhode Island court determining whether a defendant retroactively benefits from a new rule of criminal procedure must first decide whether the defendant's case was pending on direct review when the new rule was announced. If the defendant's case was pending direct review when the new rule was issued, the defendant benefits retroactively from the new rule. If, however, the defendant's appeal has already been decided when the new rule was issued, the case is treated as a petition for collateral review and is reviewed under the principles discussed in *Teague* and *Sawyer.*

Under this analysis, petitioner is not entitled to retroactive application of the holding announced in *DiStefano*. First, petitioner's appeal was not pending when *DiStefano* was issued. The petitioner inaccurately characterizes his case as an appeal pending at the time *DiStefano* was issued because of "unusual circumstances" in the appellate system. These unusual circumstances are that *DiStefano* was conferenced by this court before petitioner's direct appeal was argued and that both cases were simultaneously within the appellate system for approximately three months. Accordingly, because of this three month overlap, petitioner asserts that his case should benefit from retroactive application of *DiStefano* even though his appeal was denied nine weeks before *DiStefano* was issued. The petitioner cites no legal authority to support his argument, and we find the assertion that cases proceeding through the appellate system must follow a rigid schedule from which any deviation provides a reason to depart from the principles of retroactivity to be without merit. Accordingly we refuse to treat Pailin's petition as an appeal pending at the time *DiStefano* was issued, and correctly characterize petitioner's claim as a petition for collateral review.

In reviewing Pailin's petition for collateral review, we adopt the guidelines promulgated by the Supreme Court in *Teague* and *Sawyer*. Again, assuming *arguendo* that *DiStefano* announces new law, we find that the new law does not satisfy either *Teague* exception. First, *DiStefano* does not place an entire category of primary conduct beyond the reach of criminal law or immunize a class of defendants on the basis of their status or offense from criminal punishment. Second, *DiStefano* does not create a watershed rule of criminal procedure that enhances accuracy and is necessary to the fundamental fairness of a criminal proceeding. The record clearly indicates that the petitioner was fully advised of the consequences and the rights he was foregoing in waiving his right to a jury of twelve. The trial justice engaged the petitioner in a colloquy and determined that the petitioner's waiver was made knowingly and intelligently. Although the lower court did not comply with Rule 23(b)'s written-waiver requirement, this failure did not change the fundamental fairness of the criminal proceeding. In reaching this opinion, we are not making light of Rule 23's written-waiver requirement. We reaffirm our holding in *DiStefano* that a Rule 23 waiver must be in writing, but we are of the opinion that failure to comply with the writing requirement does not rise to the watershed mark of fundamental fairness necessary to apply *DiStefano* retroactively to a petition for collateral relief under the *Teague* analysis.

Accordingly, for the reasons stated, Pailin's petition for writ of habeas corpus is denied.