STATE

v.

**Albertino BAPTISTA.**

No. 2005–71–C.A.

Supreme Court of Rhode Island.

April 6, 2006.

Diane Daigle, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The defendant, Albertino Baptista (defendant) appeals a conviction in the Superior Court of three counts of first-degree sexual assault of his then fourteen-year-old stepdaughter. This case came before the Supreme Court for oral argument on January 25, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

April[1] was twelve years old when her mother married defendant, and fourteen years old when the first of three specified incidents of sexual assault occurred. She testified before a jury that she told neither police nor child welfare authorities about her stepfather's actions, and her mother divorced him in 1992. Approximately ten

---

1. This name is fictitious.

years after April last saw him, a chance glimpse of defendant spurred April to give a statement to the Providence Police regarding the incidents that occurred during her mother's marriage to defendant.

Prior to trial, defendant made a motion *in limine* seeking to exclude from the trial evidence of sexual contact between defendant and April not specifically alleged in the charges, as well as evidence of physical abuse perpetrated in the household against April and her mother. At a pretrial hearing, the state argued that the uncharged acts of physical abuse should be admissible to prove the essential elements of force and coercion, and the uncharged sexual assaults should be admissible to demonstrate defendant's lewd disposition or intent toward April. The trial justice, after hearing arguments from both sides, ruled in favor of admitting the evidence.

At trial, April described three different incidents of sexual assault, all taking place during her fourteenth year. First, defendant commented on the hair under April's arm and asked if she had hair growing anywhere else. When April showed defendant her pubic hair, defendant placed his body on top of April's and inserted his penis into her vagina. In the second instance, April woke up from a nap to find defendant standing over her holding his penis, which he then attempted to insert into her mouth. The defendant then engaged her in oral sodomy while she tried to resist by pushing on his legs. In the third instance, defendant cornered April while she was dressing for school, undressed her, and again inserted his penis into her vagina.

April did not report the sexual assaults during the time period in which they were occurring. April did not tell her mother what happened until the night many years later when she caught a glimpse of defendant at an intersection. Over defendant's objection, April was permitted to tell the jury that defendant's sexual abuse was not limited to the three specific instances charged, but continued for a period of two and a half years. The trial justice then provided a limiting instruction to the jury regarding this testimony.

April also testified to a volatile household while defendant lived with her and her mother, including physical altercations between defendant and April's mother, and physical abuse perpetrated by defendant directly on April. By the fall of 1986, April began fighting back when defendant physically attacked her, doing whatever she could "to protect [herself]." April testified that the physical violence in her home spiraled to the point where she once carried a rock with her to her front door because defendant had warned her when she left the house that an attack would be imminent when she returned home.

During this time period, the Department of Children, Youth and Families (DCYF) conducted an investigation of the household pursuant to a report filed by the hospital where an injured April was treated following an altercation. Also testifying at the trial was Janet Freniere (Freniere), the DCYF caseworker who took over the investigation. The DCYF report prepared during the investigation, which was admitted into evidence, described injuries to April that she attributed to her stepfather: bruises, tenderness from punching, and bite marks. Freniere interviewed April, her mother, and defendant. The defendant admitted to the caseworker that he had punched April.

April's mother testified that her marriage to defendant began to deteriorate between 1986 and 1987, as defendant grew increasingly violent toward her and her daughter. The couple separated in 1990 and divorced in 1992.

The jury returned a verdict of guilty on all three counts of sexual assault in the first degree. The defendant appeals his conviction, alleging that the trial justice erred in admitting certain evidence.

## II

## Analysis

At issue on appeal is whether the trial justice erred when he permitted the state to introduce evidence of uncharged assaults by defendant, both sexual and physical in nature. We address the evidence of uncharged sexual and physical assaults separately.

## A

### Evidence of Uncharged Sexual Assaults Against the Victim

The defendant argues on appeal that the trial justice's permitting evidence of uncharged sexual assaults against the victim resulted in unfair prejudice.[2] The defendant contends that evidence of these acts was unduly prejudicial under Rule 404(b) of the Rhode Island Rules of Evidence and that this constitutes reversible error. " '[T]he admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent.' " *State v. Grayhurst*, 852 A.2d 491, 504 (R.I.2004).

Rule 404(b) reads:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

It is well settled law both that evidence of a defendant's bad character or criminal

---

2. The state contends that defendant did not properly preserve this issue for appeal because his objection was not sufficiently specific, and he objected only twice to the relevant testimony, while such testimony was offered on many different occasions. "[I]ssues that present themselves at trial and that are not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.' " *State v. Anderson*, 752 A.2d 946, 948 (R.I.2000) (quoting *State v. Morris*, 744 A.2d 850, 858–59 (R.I.2000)). The defendant's objections in this case were more than sufficiently focused as to direct the trial justice's attention to the objection's basis. Before the trial began, defendant filed a motion *in limine* seeking unsuccessfully to exclude this type of evidence. When the evidence later was raised during the trial, defendant objected. The defendant did not state a ground. However, it is clear that the trial justice understood the ground on which defendant was objecting, because his response was to offer a cautionary instruction to the jury, *infra* n. 3, regarding the use of uncharged assault evidence to determine defendant's guilt of the charged incidents. In addition, we look to Rule 103(a)(1) of the Rhode Island Rules of Evidence for further support:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, *if the specific ground was not apparent from the context * * *.*" (Emphasis added.)

The ground was apparent from the context of defendant's objection, demonstrated by the motion *in limine*, coupled with the trial justice's immediate cautionary instruction. While setting forth the specific grounds for an objection is preferred, we rule that in the context of *this* case, defendant properly preserved this issue for appeal.

disposition may not be admitted to prove his or her propensity to commit crime, and that several important exceptions exist alongside this principle. *See State v. Parkhurst,* 706 A.2d 412, 424 (R.I.1998). In addition, we have long held that in sexual assault cases in particular, "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's 'lewd disposition or * * * intent' towards the person." *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978). This evidence may not be merely cumulative under *Jalette,* and the judge must also provide a limiting instruction to the jury[3] explaining the nature of the Rule 404(b) evidence. *Jalette,* 119 R.I. at 625, 382 A.2d at 532.

This evidence of uncharged sexual assaults against the *particular* victim is admissible under the settled law as expressed in *Jalette* to demonstrate lewd disposition or intent toward the person alleging the acts of sexual assault. April's testimony on the stand that the sexual abuse perpetrated by defendant occurred "a few times a month" at first, and lasted for approximately two and a half years, served to display defendant's lewd disposition or intent toward the very person alleging the acts with which he was charged. The *Jalette* standard as applied to uncharged sexual acts concerning the same victim as the charged sexual acts undoubtedly anticipated just such a situation as in the case at bar.

The defendant does correctly argue that under *Jalette,* such evidence may not be merely cumulative. April did not testify in detail to numerous other specific instances of sexual contact. Instead, she referenced the fact that the assaults continued for a period of approximately two and a half years from the date of the first incident. April's testimony relating to when defendant initiated sexual contact with her and how long the sexual contact continued was not merely cumulative. This testimony demonstrated defendant's continuously lewd disposition or intent toward April throughout the time they lived in the same dwelling.

Finally, defendant argues that, at the least, evidence of uncharged assaults that took place after the last of the three specific incidents should not have been admissible. We are not aware of a case in which we have held that subsequent uncharged sexual conduct is *per se* remote under *Jalette.* "Remoteness is relative, depending upon the circumstances and the conduct in question." *State v. Pignolet,* 465 A.2d 176, 181 (R.I.1983). The record discloses that April endured a two-and-a-half-year period of sexual abuse. We are satisfied that the charged and uncharged sexual assaults were not remote for the purposes of this analysis. We previously have admitted evidence of uncharged conduct that occurred seven years prior to the charged offense, in *State v. Toole,* 640 A.2d 965, 969–71 (R.I.1994). Later or intermittent sexual assaults, as exist here, prove a lewd dispo-

3. The full text of the trial justice's limiting instruction in this case is as follows:

"I want the jury to understand that to the extent that the witness has testified that on other occasions the defendant allegedly involved himself with sexual misconduct or violence with this witness, bear in mind that the defendant is not charged with these additional alleged instances. Any such evidence to the extent that you decide to consider it at all is admitted for a very limited purpose; and, that is, as it may relate in your minds to the defendant's intent and as well as to the requisite element of force and coercion the State must prove in order to sustain its burden of proof as to the three counts that are before you."

sition or intent toward April in the same manner as prior sexual assaults.

When a trial justice complies with the rules set out in *Jalette*, the admission of uncharged sexual conduct is highly discretionary. *See State v. Mulcahey*, 762 A.2d 1214, 1216 (R.I.2000). Applying this deferential standard, the trial justice did not abuse his discretion by permitting the state to introduce evidence of further uncharged sexual assaults by defendant.

## B

### Evidence of Uncharged Physical Assaults Against the Victim

■ The defendant appeals the admission of April's testimony regarding the uncharged physical assaults, arguing that this evidence unfairly prejudiced the jury.[4] The defendant contends that any uncharged physical assaults of April lack a sufficient nexus to the sexual assaults at issue in the case, and therefore should not have been admitted for the purpose of proving the force or coercion necessary to make out a case of sexual assault.

■ " '[E]vidence of *other acts, representations and conduct* at different times, *even of a criminal nature,* may be received when they are interwoven with the offense for which the defendant is being tried * * *.' " *Pignolet,* 465 A.2d at 180 (emphasis in original). In addition, " '[a]ny circumstance that is incidental to or connected with the offense under investigation in such a way that it tends to establish guilty knowledge, intent, motive, design, plan, scheme, system, or the like, is proper evidence according to the overwhelming weight of authority.' " *Id.* The force or coercion element of sexual assault need not be demonstrated by express threats; implied threats are sufficient. *See State v. Burke,* 522 A.2d 725, 735 (R.I.1987). A threat may consist of the imposition of psychological pressure on one who, under the circumstances, is vulnerable and susceptible to such pressure. *State v. St. Amant,* 536 A.2d 897, 900–01 (R.I.1988). In that case, evidence of a stepfather's controlling relationship with his stepdaughter and control over the household, which included an incident of physical abuse against the stepdaughter that was not contemporaneous with his sexual assaults, was sufficient to prove the coercion element of a sexual assault charge. *Id.* at 899, 901.[5]

The frequent and consistent physical assaults to which April and her mother were subjected during defendant's tenure in their household demonstrate that defen-

---

4. Although defendant's motion *in limine* sought to exclude generally testimony about uncharged physical or sexual assaults he allegedly committed, on appeal defendant objects particularly to the testimony offered by April. At oral argument, defendant did not contest the state's assertion that he was challenging only April's testimony, rather than testimony about physical abuse offered by April's mother, defendant's ex-wife, or that of a Department of Children, Youth and Families (DCYF) caseworker attesting to an investigation of physical abuse perpetrated on April by defendant.

5. The defendant attempts to distinguish *State v. St. Amant,* 536 A.2d 897 (R.I.1988), because

the complaining witness in that case testified at trial that the defendant exercised control over the entire household and was a strict disciplinarian. This contention depends upon accepting defendant's argument in the instant case that the fact that April eventually began attempting to defend herself against defendant's physical assaults indicated that April never had anything to fear from fighting back during defendant's sexual assaults and, therefore, there was no relation between defendant's persistent physical assaults on April and the sexual assaults with which he was charged. We decline to accept this proposition.

dant perpetrated his sexual assaults of April with implied physical threats. This rampant violence, woven throughout the household, illustrates the impending possibility of force under which April submitted to the three charged acts of sexual penetration. Because April did not testify to physical force or threats thereof during the sexual assaults, evidence of the frequent physical assaults perpetrated by defendant while he lived in the home support an environment of physical danger. This environment, in which defendant's physical assaults on April were common and severe, provided the necessary evidence for the state to have proven the implied force that caused April to submit. The numerous occasions of physical force, combined with other occasions of sexual encounters between defendant and his fourteen-year-old stepdaughter, form a sufficient nexus for the admissibility of this evidence.

The defendant argues that because April did not testify that defendant specifically verbally threatened her with violence to force her to comply with his sexual advances, nor did April testify specifically that she submitted to defendant's sexual advances because she feared physical violence, the evidence should not have been admitted to prove force or coercion. The defendant also contends that since April intervened in fights between her mother and defendant, and on occasion attempted physically to defend herself or her mother, April could not have possessed any fear of defendant's implied physical threats. Therefore, the physical assaults perpetrated by defendant against April would not be interwoven with the sexual assaults with which he was charged, and could not have provided evidence of force and coercion.

We wholly reject both these arguments. First, the fact that April did not testify that she submitted to defendant's sexual assaults because of the contemporaneous application of force or a direct threat of future force renders evidence of uncharged physical assaults *more* relevant to demonstrate the environment of physical violence permeating the household. Second, defendant falls far short when he contends that because April eventually began attempting to defend herself against defendant's physical assaults, she clearly had no fear of him when he sexually assaulted her. The defendant's admission to the DCYF child protective investigator that he had punched his fifteen-year-old stepdaughter in the face in no way proves that April had nothing to fear from resisting defendant's sexual advances. We also cannot support the corollary contention that if a teenager is eventually driven to try to protect herself from the physical abuse of her stepfather, it is less likely that her stepfather could, on another occasion, have sexually assaulted her. We note as well that this argument, which is rooted in fact, goes to the weight of the evidence, which was appropriate for the jury to determine—and was offered during defendant's cross-examinations of state witnesses and closing arguments. Whether the fact that April occasionally fought back when physically assaulted but never when sexually assaulted shows a lack of force and coercion is a jury question. The jury ostensibly rejected defendant's argument; the testimony elicited from April on cross-examination shows that she did not begin fighting back until the fall of 1986, whereas the last charged incident of sexual assault occurred in April 1986.

For all the reasons discussed above, the physical violence endured by April and her mother was sufficiently interwoven with the charged offenses to warrant admission of the evidence. The trial justice did not abuse his discretion when he permitted the state to admit testimony pertaining to the uncharged physical assaults.

### III

### Conclusion

For the reasons set forth above, we affirm the conviction. The record shall be remanded to the Superior Court.