John F. PIERCE

v.

Ashbel T. WALL II.

No. 2006–234–Appeal.

Supreme Court of Rhode Island.

Feb. 11, 2008.

Richard K. Corley, Esq., for Plaintiff.

Aaron L. Weisman, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 11, 2007, on appeal by the applicant, John F. Pierce (Pierce or applicant), from a Superior Court judgment granting in part and denying in part his application for postconviction relief. The State of Rhode Island (state) has cross-appealed from that portion of the judgment that granted the application for postconviction relief. For the reasons stated herein, we affirm in part and vacate in part.

## Facts and Travel

The underlying facts of this case are set forth in *State v. Pierce*, 689 A.2d 1030 (R.I.1997), in which this Court affirmed Pierce's conviction for numerous counts of sexual assault, save for count 2 of the indictment, for which a new trial was ordered. The applicant was charged by indictment on October 30, 1992, with seven counts of sexual assault: three counts of first-degree child molestation sexual assault, in violation of G.L.1956 §§ 11–37–8.1 and 11–37–8.2;[1] three counts of first-degree sexual assault, in violation of §§ 11–37–2 and 11–37–3;[2] and one count of second-degree sexual assault, in violation of §§ 11–37–4 and 11–37–5.[3]

The case was tried to a jury; at the conclusion of the trial, the trial justice granted Pierce's motion for judgment of acquittal on count 6, and the jury found him guilty of the remaining six counts. The defendant was ordered to serve a total of 133 years at the Adult Correctional Institutions for consecutive sentences of thirty years on counts 1, 2, and 7, first-degree child molestation sexual assault counts, and count 3, first-degree sexual assault; ten years consecutive on count 4, first-degree sexual assault; and three years consecutive on count 5, second-degree sexual assault. This Court affirmed the judgment on all counts, except count 2, and it ordered a new trial with respect to that charge. *Pierce*, 689 A.2d at 1035–36. On remand, the state dismissed count 2 based on Rule 48(a) of the Superior Court Rules of Criminal Procedure, resulting in a sentence reduction to 103 years. However, Pierce then filed a motion to reduce his sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure, which motion was granted; the motion justice ordered that all counts of the indictment be served concurrently and that the sentence on count 7 be reduced to thirty years, with ten years to serve, twenty years suspended with probation. Thus, it is undisputed that Pierce's sentence was reduced to an aggregate of thirty years.

On October 19, 2000, Pierce filed a *pro se* application for postconviction relief, and he has alleged that his conviction on counts 1 and 7 should be vacated because the counts were duplicitous and his conviction on counts 3, 4, and 5 should be vacated because the conviction resulted from an erroneous instruction on the element of force and coercion. Thereafter, an attorney entered his appearance on Pierce's behalf.

■ On February 28, 2005, the hearing justice issued a written decision, in which he granted the application concerning counts 3, 4, and 5, based on an erroneous jury instruction, and denied the application

---

**1.** Counts 1, 2, and 7.

**2.** Counts 3, 4, and 6.

**3.** Count 5.

concerning counts 1 and 7, finding that these counts were not duplicitous. An order was entered on December 7, 2005; applicant filed a notice of appeal on the same day, and the state filed a cross-appeal on December 23, 2005. A judgment was entered on June 15, 2006.[4]

## Standard of Review

■ This Court has declared that postconviction relief, as provided in G.L. 1956 chapter 9.1 of title 10, "is a remedy available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice." *Gonder v. State*, 935 A.2d 82, 84 (R.I.2007) (citing *Larngar v. Wall*, 918 A.2d 850, 855 (R.I.2007)). In passing on a decision granting or denying postconviction relief, we will not disturb the factual findings of the hearing justice absent clear error or a showing that the hearing justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Id.* at 85. "However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed *de novo.*" *Id.* (quoting *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002)). Lastly, we ac-

cord great deference to "findings of historical fact, and inferences drawn from those facts, * * * even when a *de novo* standard is applied to the issues of constitutional dimension." *Id.*

## Analysis

### I. Applicant's Appeal

■ Pierce appeals from that portion of the hearing justice's decision that declined to grant postconviction relief with respect to counts 1 and 7, which he alleges were duplicitous. He contends that the indictment referred to a general pattern of conduct rather than to a specific act alleged by the witness and that, consequently, he was denied his constitutional right to a fair trial and a unanimous jury verdict under the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and article 1, section 10, of the Rhode Island Constitution. Pierce asserts that "because multiple alleged acts of [cunnilingus and digital penetration] were presented at trial, there is no assurance that the jury unanimously agreed upon one specific act for each Count in the indictment."

The state contends that applicant waived this argument because he failed to move to dismiss these counts before trial in accordance with Rule 12(b)(2)(3) of the Superior Court Rules of Criminal Procedure.[5]

---

**4.** This Court will treat a premature appeal as if it had been timely filed. *State v. Hesford*, 900 A.2d 1194, 1197 n. 3 (R.I.2006).

**5.** Rule 12(b)(2)(3) of the Superior Court Rules of Criminal Procedure provides:

"(b) *The Motion Raising Defenses and Objections.*
" * * *
"(2) *Defenses and Objections Which Must Be Raised.* The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment, information, or complaint other than that it fails to show

jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment, information, or complaint to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.
"(3) *Time of Making Motion.* The motion shall be made no later than thirty (30) days

■ The appropriate method for challenging a duplicitous complaint, indictment, or information is by filing a pretrial motion to dismiss pursuant to Rule 12(b)(2)(3). *State v. LaPlante*, 122 R.I. 446, 449–50, 409 A.2d 130, 132 (1979) (upholding the denial of the defendant's motion to dismiss the complaints as being duplicitous because the motion was not raised on a timely basis). Although "a defendant can be granted relief from the harsh effects of the waiver imposed by Rule 12(b)(2)," this Court has declared that "the burden is on a defendant to show cause why relief should be granted notwithstanding the untimely assertion of the defense." *State v. Roberts*, 420 A.2d 837, 840 (R.I.1980). Furthermore, "[t]he determination whether to relieve defendant from the waiver is vested in the sound discretion of the trial justice." *Id.* In the present case, defendant did not file a motion to dismiss prior to trial, and therefore, this issue is waived.

■ Nonetheless, Pierce contends that this issue was not waived because it is part of his claim for postconviction relief based on ineffective assistance of counsel. To establish a claim for ineffective assistance of counsel, this Court has determined that a defendant must prove: "(1) that the counsel's performance was so deficient and the errors so serious that they violate a defendant's Sixth Amendment guaranty of counsel; and, (2) that this deficient performance prejudiced his or her defense and deprived the defendant of his or her right to a fair trial." *Ouimette v. State*, 785 A.2d 1132, 1139 (R.I.2001). There is no evidence in the record before us that supports Pierce's appellate contention that

trial counsel's assistance was deficient or that Pierce was denied a fair trial.

■ Notwithstanding, we are satisfied that the counts in the indictment were not duplicitous. "The term 'duplicity' refers to the joining of two or more offenses, however numerous, in a single count of an indictment." *State v. Saluter*, 715 A.2d 1250, 1253 (R.I.1998). We have explained the difficulty that arises when two or more distinct crimes are set forth in the same count of an indictment:

"If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both. * * * Moreover, a guilty verdict on a duplicitous indictment does not indicate whether the jury found defendant guilty without having reached an [*sic*] unanimous verdict on the commission of a particular offense. Thus, the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *Id.* (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980)).

In *Saluter*, a nine-count indictment charged the defendant with sexual assault and child molestation that was alleged to have occurred over a three-year period. *Id.* at 1251. The defendant moved for a bill of particulars, and the state responded that the acts charged in seven of the counts were committed on multiple occasions and that a single incident of the sexual abuse was charged in only two counts of the indictment. *Id.* Saluter's motion to dismiss on the ground of duplici-

after the plea is entered, except that if the defendant has moved pursuant to Rule 9.1 to dismiss, it shall be made within thirty (30) days after entry of an order disposing

of that motion; but in any event the Court may permit the motion to be made within a reasonable time after the plea is entered or a Rule 9.1 motion has been determined."

ty was denied by the trial justice. *Id.* at 1252. Although the complainant was able to recount a number of specific incidents of sexual assault, we observed that "[t]he transcripts of the trial indicate that there was confusion at times among the parties' counsel and the trial justice concerning what portions of Amy's testimony corresponded to the acts charged in the various counts of the indictment." *Id.*

We held that the use of the phrase "day and dates" in the indictment to describe when the acts occurred was "regrettable," but not fatal. *Saluter*, 715 A.2d at 1253. If an adequate bill of particulars had been filed, then any ambiguity about the time or location of the crimes could have been clarified. *Id.* at 1254. Instead, the bill of particulars for the seven counts in the indictment confirmed that the counts in the indictment charged more than one offense. *Id.* Moreover, the testimony at trial by the complainant was confusing, such that the jury could have returned a conviction on a charge with less than a unanimous verdict. *Id.* at 1255. We vacated Saluter's conviction on seven of the nine counts. *Id.*

Although this Court has refused to recognize a crime of continuing sexual assault, we upheld the state's ability to "successfully convict a defendant who has repeatedly abused or molested a child over time," as long as there is a properly constituted indictment or bill of particulars. *Saluter*, 715 A.2d at 1255, 1256. In the case before us, we are not confronted with a duplicitous indictment.

■ The record discloses that a bill of particulars was filed in this case that made clear that a single act was charged in each of the seven counts. Indeed, the indictment was amplified by the bill of particulars in such a manner that explicitly sets forth that each count alleged but one criminal offense. Furthermore, "the law does not require the state to prove that the charged sexual molestations occurred on any specific date or dates, but only that these offenses took place on some particular but unspecified day or date(s) during the period named in the indictment." *State v. Silvia*, 798 A.2d 419, 426 (R.I. 2002). We agree with the hearing justice's finding that Pierce's "defense counsel was afforded considerable latitude on cross-examination to explore with the complaining witness dates, times, locations, and circumstances regarding the different and disparate instances" that were alleged in the indictment. Accordingly, the hearing justice did not err in rejecting Pierce's application for postconviction relief based on duplicitous counts in the indictment.

## II. State's Appeal

■ The state appeals from the portion of the judgment that granted postconviction relief with respect to the first-degree and second-degree sexual assault convictions. The applicant alleged that after his conviction was affirmed, the jury instruction about the element of force and coercion that was given by the trial justice was declared erroneous by this Court. The trial justice gave the following jury instruction:

"There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult suffi-

cient to induce the child to submit to the wishes of the adult without the use of physical force or violence or the explicit threat of physical force or violence."

This instruction was excerpted from this Court's decision in *State v. St. Amant,* 536 A.2d 897, 900–01 (R.I.1988), in accord with the holding by the Supreme Court of Pennsylvania, in *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217, 1227 (1986),[6] that "addressed the definition of force, coercion, or compulsion as used in sexual-assault statutes." *St. Amant,* 536 A.2d at 900. Thereafter, in 1998, we determined that, to the extent the instruction served to circumvent the burden of proof on the element of force and coercion, it was erroneous because it "rendered nugatory the jury's ability to accept or reject the inference of force and coercion." *Saluter,* 715 A.2d at 1259. At the time of the trial and direct appeal of applicant's conviction, it is undisputed that the instruction given by the trial justice correctly reflected the law as stated in *St. Amant.* However, in seeking postconviction relief, Pierce relied on our subsequent holding in *Saluter* and argued that his conviction on those counts should be vacated. The state contended that established case law did not support the retroactive application of our holding in *Saluter.* The hearing justice disagreed. We deem this error.

This Court addressed the circumstances under which a new rule of law is to be given retroactive application in *Pailin v.*

*Vose,* 603 A.2d 738 (R.I.1992), employing the framework set forth by the United States Supreme Court in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and *Sawyer v. Smith,* 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). In *Griffith,* 479 U.S. at 328, 107 S.Ct. 708, the United States Supreme Court held that a new rule for the conduct of criminal prosecutions should be given retroactive application to cases pending on direct review or not yet final in situations in which the new rule constitutes a "clear break" from the past. However, in *Teague,* the Court modified its approach for cases on collateral review, such as the case at bar. The Court held that "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. Thus, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.*

In *Pailin,* we declared that when a decision results in a new rule, it should be applied to cases pending on collateral review only if one of two narrow exceptions exists:

"The first exception applies to rules that place an entire category of primary conduct beyond the reach of the criminal

---

**6.** In *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217, 1227 (1986), as quoted in *State v. St. Amant,* 536 A.2d 897, 900–01 (R.I.1988), the Supreme Court of Pennsylvania stated that:

"There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less

sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult * * * without the use of physical force or violence or the explicit threat of physical force or violence." *Rhodes,* 510 A.2d at 1227.

law or that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense. *Teague,* 489 U.S. at 311[, 109 S.Ct. 1060] * * *. The second exception applies to new watershed rules of criminal procedure that are necessary to the fundamental fairness of the criminal proceeding. *Id.* Under the second exception a new rule must not only improve the factfinding procedures at trial but it must also ' "alter our understanding of the *bedrock procedural elements* " essential to the fairness of a proceeding.' " *Pailin,* 603 A.2d at 741 (quoting *Sawyer,* 497 U.S. at 242, 110 S.Ct. 2822).

The United States Supreme Court has held that "[t]he principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered." *Sawyer,* 497 U.S. at 234, 110 S.Ct. 2822. In so holding, the Court's clear intent was to avoid the constant reexamination of final judgments based on later legal decisions. *Id.*

In the present case, the hearing justice found that *Saluter* "surely announced a new rule of law that improved the factfinding procedures at trial." He also found that *Saluter* fell within the second exception in *Teague* because it "announced a watershed rule necessary to the fundamental fairness of a criminal proceeding involving sexual assault, namely, that instructions which remove the element of force and coercion from the jury's deliberations are constitutionally impermissible and render void guilty verdicts resulting in such circumstances."

This Court never has applied the principle announced in *Teague,* as explicated in *Pailin,* to an application for postconviction relief based on retroactive application of a rule announced in a later case. We reject-

ed claims for retroactive application in appeals from the denial of postconviction relief in both *Taylor v. Wall,* 821 A.2d 685 (R.I.2003), and *Guido v. State,* 746 A.2d 697 (R.I.2000). In *Taylor,* the applicant applied for postconviction relief, asserting in part that the United States Supreme Court's decision in *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), should be applied retroactively. *Taylor,* 821 A.2d at 688–89. This Court determined that Taylor's right of confrontation was not denied when the trial justice permitted the victim's prior recorded video testimony to be broadcast at trial; it further held that, "even if *Craig* did create a new rule that supported the applicant's position, it would not fall within either of the two exceptions allowing it to be retroactively applied." *Taylor,* 821 A.2d at 691.

In *Guido,* the applicant applied for postconviction relief, arguing that our holding relative to grand jury subpoena procedures in *In re Doe,* 717 A.2d 1129 (R.I. 1998), should be applied retroactively. *Guido,* 746 A.2d at 699–700. We declared that *Doe* did not announce a new rule of law and that, even if it had, the rule would not be applied retroactively because it did not fall within the narrow exceptions. *Id.* at 700.

We note that the United States Supreme Court recently held that the watershed rule exception is " 'extremely narrow' " and again observed that "it is 'unlikely' that any such rules 'ha[ve] yet to emerge.' " *Whorton v. Bockting,* — U.S. —, —, 127 S.Ct. 1173, 1181, 167 L.Ed.2d 1 (2007) (quoting *Schriro v. Summerlin,* 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)). In *Whorton,* the Court held that, although *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), "announced a new rule of criminal procedure," it "does not fall within the *Teague* exception for water-

shed rules." *Whorton*, 127 S.Ct. at 1184. Indeed, since *Teague*, the Supreme Court has "rejected every claim that a new rule satisfied the requirements for watershed status." *Whorton*, 127 S.Ct. at 1181–82. The Court further expanded upon that which is necessary to qualify as a watershed rule by declaring that it must: (1) "be necessary to prevent 'an impermissibly large risk' of an inaccurate conviction[;]" and (2) "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* at 1182 (quoting *Schriro*, 542 U.S. at 356, 124 S.Ct. 2519).

■ The Supreme Court pointed to its sweeping holding in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as the only case that meets the first part of the watershed exception because *Gideon* eliminated the intolerably high risk of an unreliable conviction by requiring the assistance of counsel for any indigent defendant charged with a felony. *Whorton*, 127 S.Ct. at 1182. The Court also looked to *Gideon* for guidance concerning the second part of the watershed exception, and declared that rules that are less sweeping and fundamental than the right to counsel rule in *Gideon* are not watershed. *Whorton*, 127 S.Ct. at 1183. It is not enough that the new rule is "based on 'bedrock' constitutional rights." *Id.* Rather, the "new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Id.* The *Gideon* rule falls within this exception because it resulted in a profound and universal change in felony prosecutions. *Whorton*, 127 S.Ct. at 1184.

In this case, we believe that the hearing justice's finding that the jury instruction holding in *Saluter* qualifies as "a watershed rule necessary to the fundamental fairness of a criminal proceeding" plainly is mistaken. In equating a holding that is based, as we declared in *Saluter*, on "the well-established requirement of due process that the state must prove each element of a criminal offense beyond a reasonable doubt[,]" *Saluter*, 715 A.2d at 1259, with a rule that constitutes a previously unrecognized procedural element that is essential to the fairness of a criminal proceeding, the hearing justice committed the very error against which the Supreme Court warned. *See Whorton*, 127 S.Ct. at 1183. The state always has been required to prove the elements of a crime beyond a reasonable doubt; however, *Saluter* announced that a jury instruction must not diminish that burden of proof on the element of force and coercion for child victims. *Saluter*, 715 A.2d at 1259. Our holding in *Saluter* prohibited the jury from drawing an inference of force and coercion based on the age of the victim; it did not alter or shift the burden of proof or plow any new ground.

■ The hearing justice relied upon *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), for the proposition that a defective instruction on the state's burden of proof never could be considered harmless error. His reliance on this case was misplaced. *Sullivan* concerned a jury instruction defining reasonable doubt that had been found to be improper in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In a subsequent case, the United States Supreme Court held that *Sullivan* did not render the ruling in *Cage* retroactive despite language that such an error in a jury instruction "is structural—*i.e.*, it is not amenable to harmless-error analysis and 'will always invalidate the conviction.'" *Tyler v. Cain*, 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) (quoting *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078). This holding is not pertinent in the context

of postconviction relief. Retrospective application of a watershed rule in a collateral proceeding does not implicate a harmless-error analysis. The hearing justice failed to address adequately the settled law relating to retroactive application of a subsequent ruling to a final conviction.

Accordingly, under our established jurisprudence, there was no proper basis to apply the rule announced in *Saluter* to the final judgment in this case because it cannot be deemed a watershed rule. Our holding in *Saluter* in no way alters our understanding of the bedrock procedural elements that are essential to the fairness of a criminal proceeding. The hearing justice's holding clearly was erroneous and cannot stand.

### Conclusion

For the foregoing reasons, we deny the applicant's appeal and grant the state's appeal, thereby vacating that portion of the Superior Court's judgment that granted the application for postconviction relief and affirming that portion of the judgment that denied the application for postconviction relief. The papers in this case are remanded to the Superior Court.